### James L. Dawson v. John M. Wolf.

1. ERRORS—*when not ground for reversal.* A reversal will not follow because of the commission of errors if it appears that the verdict rendered was so fully warranted by the evidence that no other verdict could be sustained.

Action of *assumpsit.* Appeal from the County Court of Moultrie county; the Hon. E. D. HUTCHINSON, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906.

E. J. Miller and J. M. Newman, for appellant.

Raymond D. Meeker, for appellee.

Mr. Presiding Justice Ramsay delivered the opinion of the court.

James L. Dawson brought suit against John M. Wolf, to recover a commission alleged to have been earned by the former upon the sale of a farm controlled by the latter. A trial was had before a jury in the County Court of Moultrie county where a verdict was returned in favor of Wolf. Judgment was rendered upon the verdict and Dawson appealed.

Appellee, a real estate agent at Sullivan, Illinois, acquired the right to sell a certain farm near that city, and after having done so wrote to the appellant, also a real estate agent, at Tuscola, a letter in substance as follows:

"Sullivan, Illinois, July 29, 1903.

Mr. J. L. Dawson,
    Tuscola, Ill.
Dear Sir:

Your favor of yesterday is at hand. Will say that I am going today to see about taking the farm myself. I had to, in order to hold it, as there was two other men after it and something had to be done at once. Of course I am taking it to put on the market and want $110.00; it is cheap at that money. I get it for $100.00. The man had bought at another place and put this farm right down so as to close it out at once. (Here follows a description of the farm.) I will pay a commission of $300.00 for a sale of the farm or for a customer that will buy it. I tried my best to cut it out and offered half of $10, but nobody could get their men around in time and I only had it for ten days, so you see I cannot fool away any time, as there was a man coming to look at it today that I knew would buy it, so now you understand if you have a man that you think it will suit bring him down and I will pay you a commission of $300.00 as soon as sale is made.

Will send you a list of other farms in a short time. Let me hear from you and when you will come.

Yours truly,

John M. Wolf.''

Soon after the receipt of this letter by Dawson he took one Enlow to see the farm, who, after some negotiations at different times with Wolf, bought the farm at $104 per acre and not at $110, the price named in the letter.

Dawson claims that he is now entitled to recover from Wolf the full sum of $300 as his commission, less $100 paid him by Wolf, while Wolf contends that Dawson is not entitled to anything in excess of the $100 for his services and that he has already been paid that amount.

The determination of the merits of the case depends upon whether or not Dawson is entitled to recover upon the strict terms of the contract as stated in the letter, or whether or not under all the circumstances of the case he should be allowed anything in excess of $100 which he has already received from Wolf. The jury found upon the trial that Dawson was not entitled to anything in excess of the $100 already paid, and we are disposed to think that no other verdict could have been justly returned upon the evidence.

A fair interpretation of the letter as a whole is that a commission of $300 would be paid if the farm should be sold at $110 per acre, and not that such commission should be paid at any rate without regard to the price for which the farm might be sold.

When Enlow first examined the farm and when it was priced to him at $110 per acre he refused to pay the price because of the condition the farm was in, alleging that the fencing was in bad repair and the farm overrun with weeds. After Enlow had refused to buy the farm at $110 per acre it was suggested that Wolf cut the price, to induce Enlow to make the purchase, and thereupon the question at once arose as to what Dawson's commission would be in case Wolf cut

the price to Enlow. Wolf testified that when the subject-matter of cutting the price was under discussion, that Dawson said to him that if he (Wolf) would cut the price to Enlow, he could cut his (Dawson's) commission, too; that whatever he (Wolf) thought right to pay him would be all right. J. H. Baker heard this conversation between Dawson and Wolf and testified in substance that Dawson said to Wolf: "Cut the price and you can cut my commission; whatever you pay me will be all right." It is true that Dawson denied having said that Wolf could cut his commission in case he cut the price of the farm, or that he would accept such commission as Wolf should determine was right to be paid to Dawson; but the issue involved upon this feature of the controversy was especially for the jury to determine and they chose to believe the testimony of Baker and Wolf instead of the uncorroborated testimony of Dawson, and in doing so they acted upon what seems clearly to have been a preponderance of the evidence.

It further appears from the evidence that before Enlow bought the farm, and as a means of inducing him to make the purchase, Wolf expended the sum of about $223 to put the farm in such condition that Enlow would buy it at the price of $104 per acre. Appellant contends that the admission of this evidence was error; but in our view of the case it was eminently proper, as Wolf was entitled to show all expenses which he had to meet to induce the making of the sale. In this connection the proving of such expense was as proper as showing that the farm was sold for $104 and not for $110 per acre.

The evidence in the case fairly preponderates in favor of the theory that after Enlow refused to take the farm at $110 per acre Wolf cut the price of the farm to $104 per acre upon Dawson's suggestion, and had to expend a considerable sum putting the farm in condition to get Enlow to buy it even at that price, and that Dawson agreed with Wolf that if he (Wolf) ef-

fected a sale to Enlow at a cut price, he could pay to him (Dawson) whatever he, Wolf, thought right to pay. By this action Dawson put the matter of compensation wholly in the hands of Wolf to determine, and the jury were fully warranted by the evidence in returning the verdict they did.

There were other objections made and exceptions saved to the action of the trial court relating to the admission of evidence and the giving of instructions; but in our judgment the merits of the case are so clearly with appellee that we do not think any reversible error was committed by the court in the respect named. If the case was close upon the facts, we might find it necessary to reverse it upon some of the errors assigned, but as the verdict is so fully warranted by the evidence, and as no other verdict could be sustained upon it, we affirm the judgment.

*Affirmed.*